E. P. Duncan, as Liquidator of Bank of Coral Gables, an insolvent banking corporation organized under the laws of the State of Florida, *Appellant*, v. E. C. Cady, *Appellee*.

149 So. 11, 549.
Opinion filed April 22, 1933.
Order denying re-hearing entered July 10, 1933.

*Stapp, Gourley, Vining & Ward*, for Appellant;

*Bryant & Pittman*, for Appellee.

Gray, Circuit Judge.—The record in this case shows that Cady and the firm of Webb & Mevers, Contractors, entered into an agreement whereby the contractors were to erect several houses in Coral Gables for Cady, and Cady was to pay for such work as the construction progressed: Cady, whose home was in Brooklyn, N. Y., could not be in Florida during the time of construction, consequently the fourth paragraph of the building contract read as follows:

"4. That the owners agree to place in a banking institution in Dade County, Florida, to be agreed upon by the parties, sufficient money to meet all bills for labor and

material actually incurred in the building and improvements, and to have such sums ready to be paid to the parties entitled to receive such payments, as they are incurred, and as they fall due; said payments to be made upon certificate of the contractors approving the payment and instructing the bank selected by the parties to pay the same."

With a view of selecting a bank for the deposit, Cady and a member of the contracting firm went to The Bank of Coral Gables and talked with the president and cashier. The president was asked what charge would be made for handling such a transaction and told the parties the charge would be "nominal." According to the testimony, this charge was later omitted in order to help Webb & Mevers, who were customers of the bank, put over the deal with Cady. However, before the deposit was made, Mevers wanted to know if there was any way the bank could pay interest on the deposit, and, later, a director of the bank advised the parties to purchase certificates of deposit, which would draw interest and would also eliminate much red tape for the bank in the handling of the transaction. The cashier agreed that this would be the better way to handle the transaction. Cady then produced a check, payable to Webb & Mevers, which check was properly endorsed and given to the cashier, who drew the certificates of deposit and a cashier's check, which instruments were payable to Webb & Mevers, but were retained by the bank and Webb & Mevers were given a letter reading as follows:

> "Coral Gables, Fla.
> April 2, 1930.

Webb & Mevers,
Coral Gables, Fla.
Gentlemen:

This is to acknowledge receipt of the following:

Our cashier's check No. A8089 payable to your order for $1,500.00

Certificate of Deposit No. 79 payable to your order for $5,500.00

Certificate of Deposit No. 80 payable to your order for $5,500.00

Certificate of Deposit No. 81 payable to your order for $1,000.00.

It is our understanding that we are to hold the above described cashier's check and certificates of deposit and from time to time, at your direction, as construction progresses on the buildings which you are erecting for Dr. E. E. Cady, we will deposit to your regular account upon your properly endorsing these items, amounts specified as needed as shown by proper statements of costs which are to be delivered to us, and we in turn will forward same to Dr. Cady in Brooklyn, New York.

> Yours very truly,
> (Signed) T. H. Tumlin.
> T. H. Tumlin,
> Cashier.

THT/e"

a copy of which letter was given to Cady.

Webb & Mevers started construction of the houses, drawing sums from the bank as the work progressed. On July 11, 1930, the bank closed its doors owing a principal balance of $7391.76 to the contractors. The appellant was placed in charge of the bank as liquidator and the contractors claimed a preference of the bank's assets for the above sum, this was denied by the liquidator and the claim allowed as a general claim. Cady was forced to pay for the completion of the construction work, whereupon Webb & Mevers executed an assignment of the above claim to Cady.

The Chancellor allowed the claim as a preferred claim, and also allowed the sum of $18.34 as interest on the certificates of deposit.

The defendant appealed.

The essential facts involved in the present case and the case of Newsom v. Tampa Shipbuilding & Engineering Company, 100 Fla. 1173, 131 So. 115, are practically alike, in that in both cases the deposits were in the form of checks payable to one of the depositing parties and not to the bank; the depositing parties in both cases intended that the funds be placed in escrow; both banks understood the intention of the depositing parties; in the Tampa case as escrow charge was made, while in the present case the charge was discussed but later omitted; interest on the deposit was requested in both cases by the depositing parties; the bank in both cases changed the contract of the parties with the knowledge of said parties; in both cases the deposits were evidenced by certificates of deposit; in neither case were the certificates ever issued by the bank; in both cases the certificates purported to bear interest; in both cases the certificates, and not the specific sum of money, were in the hands of the bank at closing; and the decree of the Chancellor in both cases allowed a sum as interest on the deposits, which sum was ordered eliminated from the decree in the Tampa case and will be so eliminated in the present case.

Counsel for appellant argued that the fact the contract of the depositing parties with reference to the manner of depositing the fund was changed by the bank with the knowledge of said parties, although the remainder of the contract was carried out by the bank, is sufficient to create an entirely new contract and thus defeat recovery. We call attention to the fact that this was also done in the

Tampa case in that the receipt for the money in the Tampa case recited that the check was received and was to be held in accordance with the letter of instruction *"except that the money is to be held in a certificate of deposit."*

The fact that interest on the deposit was requested by the depositing parties, and allowed by the bank, cannot be made a determining feature of the present case. Neither will the fact that the bank used the deposit as though it was a general deposit be controlling. Meyers et al. v. Matusek, 98 Fla. 1136, 125 So. 360.

A certificate of deposit is a negotiable instrument, Elmore County Bank v. Avant, 189 Ala. 418, 66 So. 509, and is therefore controlled by the negotiable instrument law. Sec. 4674 R. G. S. 1920; Sec. 6760 Compiled General Laws of 1927 which in part provides as follows: " 'Issue,' means the first delivery of the instrument complete in form to a person who takes it as a holder." Also see the case of the City of Jacksonville v. Renfroe, 102 Fla. 512, 136 So. 254. Consequently, as the certificates of deposit were never delivered to the party to whom payable, but were kept by the bank, they were never issued but were retained by the bank merely as memoranda of the transaction.

On authority of the opinion in the case of Newsom v. Tampa Shipbuilding & Engineering Company, 100 Fla. 1173, 131 So. 115, and of the opinion in that case on rehearing, 100 Fla. 1179, 137 So. 882, the decree of the Chancellor should be modified to eliminate therefrom the item of $18.34, interest paid on the escrow deposit, the remainder of the decree to stand affirmed.

WHITFIELD, ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.

DAVIS, C. J., disqualified.

On Re-hearing.

An appeal from the Circuit Court for Dade County, Uly O. Thompson, Judge.

*Stapp, Gourley, Vining & Ward,* for Appellant;

*Bryant & Pittman,* for Appellee.

PER CURIAM.—This case coming on to be heard upon the petition of the appellant for re-hearing, and said petition having been duly considered by the Court;

It is thereby ordered and adjudged that the petition for re-hearing herein be and the same is hereby denied.

WHITFIELD, ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.