STATE *ex rel.* WOMAN'S CATHOLIC ORDER OF FORESTERS v. CITY OF FORT MYERS.

196 So. 705
En Banc
See 140 Fla. 224, 191 So. 289
Opinion Filed June 7, 1940

*J. Franklin Garner* and *Whitfield & Whitfield,* for Relator;

*R. E. Kurtz* and *Parker Holt,* for Respondent.

BUFORD, J.—This is an original proceeding in mandamus in which it was sought to coerce Respondent to assess and

levy taxes to produce a fund sufficient to pay certain obligations due the Relator.

The alternative writ alleges in effect that the City of Fort Myers, Florida, did on the 15th day of March, 1924, issue and sell certain 5½% bonds known as "City of Fort Myers 5½% Sanitary Sewer Bonds" and acknowledged itself indebted and for value received promised to pay to the bearer the principal sum of said bond with interest thereon from date at the rate of 5½% per annum payable semiannually upon presentation and surrender of the interest coupons thereto attached as they severally should mature. That each of the bonds were properly executed by the issuing authority and that each of the bonds were validated by the Circuit Court of Lee County on May 24th; that Relator holds seven of the bonds above named in the amount of $1,000.00 each, numbered 69 to 75, both inclusive, all of which bonds will mature March 15, 1944; that all of said bonds have coupons attached which mature March 15, 1938, September 15, 1938, and March 15, 1939, in the aggregate sum of $577.50. Copy of bonds and coupons are attached.

It is alleged that on the 15th day of March, 1924, the City of Fort Myers being thereunto lawfully authorized, did issue and sell certain bonds designated "city of Fort Myers 5½% gas plant and main bond"; that by the terms of each of said bonds the City of Fort Myers acknowledged itself indebted and for value received promised to pay to bearer the value of such bond with interest thereon at the rate of 5½% payable semiannually upon presentation of the interest coupons thereunto attached as they severally mature.

Allegations of sufficient facts are made to show that the bonds were properly executed. It is alleged that each of

said bonds was validated by decree of the Circuit Court of the Twelfth Judicial Circuit in and for Lee County on the 1st day of May, 1924. Copy of the bond is attached.

It is alleged that Relator is holder of eight of the bonds of that issue in the amount of $1000.00 each numbered 54, 55, 73 to 78, both inclusive; that all of such bonds mature March 15, 1944, and that coupons are attached maturing March 15, 1938, September 15, 1938, and March 15, 1939, in the aggregate sum of $660.00. Copy of one of the coupons is attached.

It is alleged that on the 15th day of March, 1924, the City of Fort Myers did issue and sell bonds designated "City of Fort Myers 5½% Paving Bonds"; that by the terms of each of said bonds the City of Fort Myers acknowledged itself indebted and for value received promised to pay to bearer the principal sum of said bond with interest thereon from the date thereof at the rate of 5½% per annum payable semi-annually upon presentation and surrender of coupons thereunto attached as they severally matured.

Allegations show that the bonds were properly executed and that each of said bonds was validated by decree of the Circuit Court of the Twelfth Judicial Circuit of Florida on the 1st day of May, 1924. Copy of the bond is attached. That Relator is the holder of five bonds of this issue numbered 44 to 46, both inclusive, and 87 and 88, all of which bonds mature March 15, 1944. All of said bonds have coupons attached which matured March 15, 1938, and coupons attached maturing September 15, 1938, and March 15, 1939, in the aggregate sum of $412.50. Copy of the coupons is attached.

It is alleged that the City of Fort Myers being lawfully authorized, did on April 1st, 1926, make, issue and sell certain bonds of said city designated "City of Fort Myers

Incinerator Bonds." That by the terms of each of said bonds the City of Fort Myers acknowledged itself indebted and for value received promised to pay to bearer the principal sum of said bonds with interest thereon from the date thereof at the rate 5½% per annum payable semiannually upon presentation and surrender of coupons thereunto attached as they severally matured. Allegations show the bonds were properly executed and were validated by decree of the Circuit Court of the Twelfth Judicial Circuit of Florida on the 31st day of May, 1926. Copy of the bond is attached. That the Relator is the holder of three bonds of said issue in the amount of $1,000.00 each numbered 6, 9 and 10, all of which bonds mature April 1, 1956, and coupons maturing April 1st, 1938, October 1, 1938, in the aggregate sum of $150.00. Copy of coupon is attached.

That being thereunto authorized by law, the City of Fort Myers did on April 1, 1926, make, issue and sell bonds designated "City of Fort Myers Playgrounds and Recreation Bonds." That by the terms of each of the said bonds the City of Fort Myers acknowledged itself indebted and for value received promised to pay to bearer the principal sum of said bond with interest thereon from date at the rate of 5% per annum upon presentation and surrender of the interest coupons thereunto attached as they severally matured. Proper execution is shown by allegation of the writ and that each of said bonds is validated by a decree of the Circuit Court of the Twelfth Judicial Circuit of Florida in and for Lee County. Copy of bond is attached. That the Relator is the holder of nine of the said bonds in the aggregate amount of $1000.00 each numbered 143 to 145, both inclusive, and 172 to 177, both inclusive, all of which mature April 1, 1956, and coupons attached maturing April 1, 1938, and October 1, 1938, in the aggregate sum of $450.00. Copy of coupon is attached.

That the City of Fort Myers being thereunto lawfully authorized did on the 1st day of April, 1926, make, issue and sell certain bonds designated "City of Fort Myers Water System Extension Bonds." That by the terms of each of said bonds the City of Fort Myers acknowledged itself indebted and for value received promised to pay to bearer the principal sum of said bond with interest thereon from date thereof at the rate of 5% per annum payable semi-annually upon presentation and surrender of the interest coupons thereunto attached as they severally matured, and that each bond was validated on the 31st day of May, 1926. Copy of the bond is attached.

That relator is holder of fifteen bonds of the said issue in the amount of $1000.00 each, numbered 76 to 80, both inclusive, and 286, 287, 393 to 400, both inclusive, all of which mature April 1, 1956, and coupons attached maturing April 1, 1938, and October 1, 1938, in the aggregate sum of $750.00. Copy of coupons attached.

That the City of Fort Myers benig thereunto lawfully authorized did on April 1, 1926, make, issue and sell bonds designated "City of Fort Myers Sewerage System Extension Bonds." That by the terms of each of said bonds the City of Fort Myers acknowledged itself indebted and for value received promised to pay to the bearer the principal sum of said bonds with interest thereon from date thereof at the rate of 5% per annum, payable semi-annually upon presentation and surrender of interest coupons thereto attached as they severally mature. Allegations show proper execution of the bonds and that each bond was validated by decree of the Circuit Court of the Twelfth Judicial Circuit of Florida on the 31st day of May, 1926, copy of the bond is attached. That the Relator is holder of forty-eight of that issue of bonds in the amount of $1000.00 each, num-

bered 47, 48, 71 to 75, both inclusive, 558 to 564, both inclusive, 708 to 715, both inclusive, 727 to 751, both inclusive and 786, all of which bonds matured April 1, 1956. That bonds numbered 727 to 751, both inclusive, have coupons attached which matured April 1, 1932, October 1, 1932, April 1, 1933, October 1, 1933, April 1, 1934, October 1, 1934, April 1, 1935, October 1, 1935, April 1, 1936, October 1, 1936, April 1, 1937, October 1, 1937, and that said bonds numbered 47, 48, 71 to 75 both inclusive, 558 to 564, both inclusive, 708 to 715, both inclusive, 727 to 751, both inclusive and 786 have coupons attached that matured April 1, 1938, and matured October 1, 1938. That the aggregate sum of said coupons is $9,900.00. Copy of the coupons is attached. That all of said coupons that have matured and those that will mature during the fiscal years 1938 and 1939 are in the total sum of $12,900.00.

It is then alleged:

"That under the Constitution and Laws of the State of Florida, including the several laws of which said bonds hereinabove described were issued, it became and was, and still is, the duty of the Respondent, through duly qualified officials for such purposes, to appropriate in the annual budget funds sufficient to pay the past due and current maturing interest of said city, including the interest coupons of your Relator, hereinabove described. It is the further and continuing duty of said Respondent, through duly qualified officials for such purposes, to levy a millage or tax sufficient to produce the amount so appropriated to pay said past due and current maturing interest coupons, including those of the Relator hereinabove set forth.

"11. That said Respondent, City of Fort Myers, Florida, has been in default for seven years in the payment of principal and interest of its outstanding bonds, and during said

period said Respondent has failed to levy and collect sufficient taxes to provide for the payment of principal and interest of its municipal bonds, including those hereinabove described, owned by the Relator; and said Respondent, through properly and lawfully authorized officials, has stated that it will not appropriate in the budget for the fiscal year 1938-39 an amount sufficient to pay the interest and principal of its outstanding bonds during the said fiscal year and that said Respondent will not levy an ad valorem tax sufficient to provide for the payment of the principal and interest of its municipal bonds, maturing during said fiscal year, as same falls due.

"12. That it is the duty of the Respondent, City of Fort Myers, through duly qualified officials for such purposes, to include in the annual budget adopted during the year 1938 an appropriation of a sum sufficient to pay the past due interest coupons and interest coupons maturing during the fiscal year 1938-39, hereinabove described and owned by the Relator; and it is further the duty of said Respondent through duly qualified officials for such purposes, to include in the tax levy made during the year 1938, a sufficient tax, levied upon all the taxable property of said city including homesteads, sufficient as collected, to provide the funds necessary to pay the past due and current maturing interest coupons of the Relator hereinabove described. That it is the duty of the Respondent through duly qualified officials for such purposes to spread said tax levy on the assessment roll of said city for the year 1938, and to extend such special tax upon the respective properties, including homesteads, and to attach thereto the certificate of said duly authorized officials of said Respondent. It is the duty of the Respondent through duly qualified officials for such purposes to attach to said assessment roll a warrant to the

tax collector, signed by the duly authorized officers for such purposes of said Respondent, in the sum prescribed by law, commanding the duly qualified officer for such purposes of said Respondent, City of Fort Myers, to collect the taxes set down in such roll, and it is the duty of said Respondent, City of Fort Myers, through duly authorized officials for such purposes, to prepare, pass, adopt, approve, sign, certify and execute all necessary ordinances, resolutions, receipts, papers, certificates, warrants, vouchers and estimates, and to do and perform all things necessary to be done in the performance of the duties herein specified."

To the original alternative writ answer and return was filed and on motion for peremptory writ notwithstanding the return, the case was considered and on October 6, 1939, our opinion and judgment was entered in and by which peremptory writ was denied. See 140 Fla. 224, 191 Sou. 289.

Thereafter, on motion, we allowed amendments of the alternative writ.

By amendment to the writ it is alleged in paragraph 2 thereof in effect that the bonds dated March 15, 1924, designated "City of Fort Myers 5½% Sanitary Sewer Bonds" were sold and delivered to the purchasers thereof on May 27, 1925, the same being 28 days after the charter of the City of Fort Myers had been amended by Chapter 10564, Laws of Florida, Acts of 1925; and that by the said Chapter 10564, Acts of 1925, it was provided, "Each year while any of said bonds are outstanding and unpaid the City shall levy and collect on all taxable property therein taxes sufficient to pay the interest on said bonds as the same mature and sufficient to provide a sinking fund for the payment of the principal of said bonds at their maturity." Like allegations are contained by amendment as to the bonds designated "5½% Gas Plant and Mains Bonds" and as to

the bonds designated "City of Fort Myers 5½% Paving Bonds" hereinbefore referred to.

It is also alleged in effect that the Legislature of 1929 enacted Chapter 14052, Special Acts of 1929, and that in Section 34 of that Act it was provided:

"Section 34. The City Council shall have power to raise by taxation of all taxable property within the City Limits, such amounts as may be necessary to carry on the City Government, year by year, including a sufficient amount to insure the payment of interest and set aside a sinking fund for the retirement of any and all outstanding bonds or certificates of indebtedness of said City. And in addition thereto the City Council shall have the right and power to levy further taxes, not to exceed 3 mills on the dollar, for library, charitable and publicity purposes of the City."

It is alleged that Section 80 of Chapter 14052, *supra,* provided for the adoption or rejection of the charter Act by the qualified electors of the City at an election to be called for that purpose. That pursuant to this provision, the election was duly called, the publication thereof was made for the requisite time in a newspaper published in the City of Fort Myers, Florida; that an election was held pursuant to the call on the 18th day of June, 1929, and that the election resulted in the adoption of the proposed charter; that on the 3rd day of July, 1929, the Honorable Doyle E. Carlton as Governor of Florida issued his proclamation proclaiming the ratification by referendum of the Act of the Legislature, *supra,* granting a new charter to the City of Fort Myers, and thereby putting into effect the charter of the City of Fort Myers so adopted by the electors at the election held on June 18, 1929.

It is then alleged:

"That it is the duty of the qualified officials of the City

of Fort Myers, Florida, to appropriate in the annual budget funds sufficient to pay the past due and current maturing interest of said City, including the interest coupons of your Relator hereinabove described. It is further the duty of the qualified officials of the City of Fort Myers, Florida, to levy a millage on taxes sufficient to produce the amount so appropriated to pay said past due and current obligations of said City, including those of the Relator hereinabove set forth."

Paragraph 10-b alleges that the Legislature at the regular session in 1937 attempted to pass and enact into law Chapter 18532, Acts of 1937, but that said Act was never enacted into law in accordance with the Constitution of Florida because, "The title of Chapter 18532, being House Bill Number 2048, as signed by the Speaker and Chief Clerk of the House of Representatives, the President and Secretary of the Senate and Governor of the State of Florida has an additional clause in the title of said Bill or Chapter, the addition is shown by the underlined portion above, said underlined portion was not in the title of the Bill as passed by the House of Representatives and the Senate in open session, the title of said House Bill Number 2048, as passed by the House of Representatives and Senate is as follows: 'A BILL To Be Entitled an Act To Amend Section 33 of Chapter 16425, Laws of Florida, Acts of 1933, Being an Act Creating the City of Fort Myers, Florida, Defining its Boundaries, Jurisdiction and Powers: Commonly Known as the Charter of the City of Fort Myers, Florida, so as To Provide that in Making Levy or Taxes for the Purpose of Paying Interest or Principal on Outstanding Bonds, and Interest Coupons Thereon, or for the Payment of Judgments Recovered Therefor, that the Levy Permitted for the Payment of Such Interest or Principal on Outstanding

Bonds or for the Payment of Judgments Recovered Thereon, Shall Levy as Was Permitted by the Charters of the City of Fort Myers, Florida, in Effect at the Time When the Bonds or Interest Coupons Were Issued: Repealing All Laws in Conflict Herewith and Providing for the Time of Taking Effect of This Act."

Other reasons are stated as grounds for holding this Act invalid, but it is not necessary to refer to them here.

The command of the amended alternative writ is:

"The City of Fort Myers, a municipal corporation under the laws of the State of Florida, through properly and lawfully authorized officials, representatives, clerks, attorneys, agents and servants to include in the annual budget adopted during the year 1939, and appropriation of a sum sufficient to pay the interest coupons of the Relator herein described and exclusively for the purpose of paying said obligations and forthwith to levy a tax for the fiscal year 1939-40, on all the taxable property within said municipality sufficient to pay the obligations herein described and exclusively for the purpose of paying said obligations, to assess said taxable property pursuant to such levy."

Answer and return has been filed and now motion for peremptory writ, notwithstanding the return, comes on for consideration.

At the time of the promulgation of our opinion, *supra,* Chapter 10564, Special Acts of 1925, had not been pleaded and was not brought to the attention of the Court, nor was it considered by the Court.

We consider it to be that the first matter which we have now to decide, not disposed of in our former opinion, is the question of the available tax levy to be applied to those issues of bonds which were dated March 15, 1924, but not

actually issued until May 27, 1925, which was after the effective date of Chapter 10564, *supra*.

The involved legislative Act was approved and became a law on the 27th day of April, 1925, and provides as follows:

"Section 1. The City of Fort Myers, Lee County, Florida, is hereby authorized to issue and sell its negotiable bonds in the denomination of $1,000 each, to the amount of four hundred and forty-five thousand dollars ($445,000) for the purpose of street paving, installing storm sewers, sanitary sewers, water mains, and a gas plant and mains, the proceeds of said bonds to be apportioned and used exclusively for each of said purposes as the present governing authority of said City, its City Commission, or their successors in office, may determine. Said bonds and coupons may bear such date and numbers, be in such form, bear such rate of interest payable semi-annually not exceeding five and one-half (5½) per centum per annum, and payable at such place or places as said governing authority shall determine, shall be signed by the Mayor and countersigned by the Clerk of said City, and sealed with the corporate seal of said City, and the coupons shall bear fac-simile signatures of said Mayor and Clerk, and said bonds shall become due and payable twenty (20) years from the date thereof. Each year while any of said bonds are outstanding and unpaid, the City shall levy and collect on all taxable property therein, taxes sufficient to pay the interest on said bonds as the same matures, and sufficient to provide a sinking fund for payment of the principal of said bonds at their maturity.

"Sec. 2. The proceedings heretofore had by the City of Fort Myers, its Commission and other officials to authorize the issuance of bonds to the amount of $445,000 for the

purposes specified in Section 1 hereof, including the election held in said City on the 28th day of December, 1923, and the sale thereof heretofore made, are hereby ratified, validated and confirmed, and the said City and its governing body or other officials may proceed to issue the said bonds under the proceedings so had or as the same may hereafter be altered, amended or qualified by the said commission or governing body of said City, under the powers conferred by this Act."

The record shows that the bonds referred to in this Act were those designated "City of Ft. Myers 5½% Sanitary Sewer Bonds" dated March 15, 1924; "City of Ft. Myers 5½% Gas Plant and Main Bonds" dated March 15, 1924, and "City of Ft. Myers 5½% Paving Bonds" dated March 15, 1924.

The bonds issued at a later date were dated April 1, 1926, and were "City of Ft. Myers Play-ground and Recreational Bonds," "City of Ft. Myers Water System Extension Bonds" and "City of Ft. Myers Incinerator Bonds."

Issue of bonds does not occur until the bonds have been duly executed and delivered. In City of Jacksonville v. Renfroe, 101 Fla. 1073, 136 Sou. 254, it was held that "issue means the first delivery of the instrument complete in form to a person who takes it as a holder." See also Duncan v. Cady, 109 Fla. 491, 149 Sou. 11.

It, therefore, follows that the bonds to which the plaintiff's coupons were attached, which bonds were dated March 15, 1924, were issued subsequent to the enactment of Chapter 10564, Acts of 1925, and were issued pursuant to and subject to the tax provision of that legislative Act. It is not necessary to again quote the provisions of that Act. It is sufficient to say that by it the taxing authority was au-

thorized to proceed to issue those bonds under the terms and conditions named therein. Purchasers of such bonds to whom the same were delivered took the same with the application of the legislative Act providing "Each year while any of such bonds are outstanding and unpaid the city shall levy and collect on all taxable property therein taxes sufficient to pay the interest on said bonds as the same matures and sufficient to provide a sinking fund for payment of the principal of the said bonds at their maturity."

By the operation of this Act the limited tax theretofore provided in such cases was eliminated. By reason of this condition, the holders of such bonds so issued after the passage of that legislative Act have the clear legal right to the levy and assessment of a tax sufficient to pay the interest on the bonds as the same matures and sufficient to provide a sinking fund for the payment of the principal of the said bonds at their maturity.

For authority of this statement we cite the case of Weinberger v. Board of Public Instruction of St. Johns County, 93 Fla. 470, 112 Sou. 253, and cases there cited. See also Rountree v. State *ex rel.* Georgia Bond & Mortgage Co., 102 Fla. 246, 135 Sou. 888. This holding is not in conflict with our former opinion but a different result is reached because, as hereinbefore stated, the applicable statute authorizing the issuance of the bonds, that is Chapter 10564, *supra,* was not pleaded or considered at that time.

Our attention is also called to Chapter 10567, Special Acts of 1925, but as there is no material difference between the provisions of that enactment and those contained in Chapter 10564, there is no need to comment on its provisions or its effect.

In City of Fort Myers v. State, 129 Fla. 166, 176 Sou. 483, we held in effect that the obligation of the bond con-

tract is fixed by the law as of the date of the issuance of the bond. It is to be borne in mind that the obligation of the bond contract is not necessarily fixed by the law as of the date *of the bond,* but as of the date of the *issuance* of the bond.

Now as to the bonds bearing date of April 1, 1926, being designated "City of Fort Myers Incinerator Bonds," "City of Fort Myers Play-ground and Recreational Bonds" and "City of Fort Myers Water System Extension Bonds," when these bonds were issued the provisions of Chapter 10563, Special Acts of 1925, were controlling. Section 33 of that Act provides: ·

"The commission shall have power to raise by taxation of all taxable property within the City limits, and by licenses on occupations, businesses, and professions therein such amounts as may be necessary to carry on the City Government, year by year; provided, that the levy for general City purposes shall not exceed fifteen mills on the dollar of the taxable property, and for interest and sinking fund on outstanding bonds and certificates of indebtedness, eight mills on the dollar, and for library, charitable and publicity purposes, two mills on the dollar; provided further that there may be levied a special tax not exceeding two and one-half mills on the dollar against any lots, parcels or tracts of unimproved land within the City limits, which have remained idle and unimproved under the same ownership for two years or more prior to the date of assessment."

. Section 63 of the Act provides, in part:

"Sec. 63. General bonds of the city may be issued for any municipal purpose in such denomination and bearing such rate of interest not exceeding 6 per cent up to 15 per cent of the assessed valuation of all property for city taxes, according to the annual assessment in any year in

which the bonds are to be issued; provided that the bonds issued for public utilities such as water works, ice plant, gas plant and electric light and power plant, incinerator plant, shall not be counted in the 15 per cent limit; provided that bonds issued against improvement certificates may bear interest not exceeding 7 per cent per annum.

"(a) The necessity for the issuance of such bonds must be fixed and determined by the City Commission, by resolution duly passed and spread upon the minutes. And before such bonds shall be issued, authority therefor shall be obtained from the qualified electors of the city, at an election to be called for that purpose by the Commission, and held after thirty days notice given by publication once a week in a newspaper published within said City."

In our former opinion of October 6, 1939, we said: "Chapter 10563, Acts of 1925, under which the bonds dated April 1 were issued, also contained a limited tax to support all bonds."

It would appear upon reading only Section 33, *supra,* that such section does limit the tax to be levied for the payment of bonds and interest to 8 mills but when that provision is considered with the former charter provision in Section 24 of Chapter 5496, Laws of 1905, which reads, in part, as follows: "For ordinary purposes the rate should not exceed 12 mills on the dollar. A special tax may be levied not exceeding 8 mills to create a sinking fund for the payment of the town's bonded indebtedness or the interest thereon and for the discharge of any judgment obtained against the Town, the payment of which may be compelled by mandamus;" and we then take into consideration the provision of Section 63 of Chapter 10563, it is apparent that it was the legislative intent to apply the original 8-mill limitation to the then outstanding bonds and other certifi-

cates of indebtedness and that it was not intended to apply that limitation to future bond issues.

It is generally held that the authority to issue bonds in and of itself constitutes an authority to levy taxes for the payment of the bonds and the interest thereon as and when the same matures. See Rawls County v. United States, 105 U. S. 733, 26 L. Ed. 1220.

Section 63, *supra,* limited the amount of bonds that might be issued for any municipal purpose except bonds issued for public utilities such as water works, ice plants, gas plant and electric light and power plant and incinerator plant, but placed no limitation on the bonds to be issued for such public utilities.

Now if the City issued its general bonds for municipal purposes in an amount equal to 15% of the assessed valuation of all the taxable property the statute necessarily contemplated that a sufficient tax should be levied to pay such obligation with interest at maturity and when the statute further provided that the city might issue public utility bonds, the amount of which should not be counted in the 15% limitation, the statute necessarily contemplated that a sufficient tax should be levied to pay those bonds and the interest thereon as and when same matured. Thus, we see that the city was authorized to issue its bonds for general municipal purposes up to a certain amount, then issue its bonds for public utilities in an unlimited additional amount. We can take any arbitrary figure as the assessed valuation and clearly demonstrate that the provisions of Sections 33 and 63, *supra,* cannot be harmonized. For instance, if the assessed valuation is $1,000,000, the city may issue $150,000 of general bonds with interest thereon at 6 per cent per annum. Six per cent on $150,000 would be $9,000, if the tax were collected in full, while 8 mills on the assessed valuation would produce only $8,000.

Under this state of facts, if we apply the provisions of Section 33 it would result in necessarily determining that the city was authorized to issue bonds but denied the power to levy a tax to pay the full amount of the interest, to say nothing of the principal.

A like situation was considered by the United States Supreme Court in the case of United States v. County of Clark, 96 U. S. 211, 24 L. Ed. 628, and in that case the Court held in effect that the statutory provision purporting to limit the millage which could be levied to create the fund with which to pay the bonds and interest thereon authorized to be issued was not applicable and that the municipality had authority to levy sufficient tax to pay the interest, and to create a sinking fund for the payment of the bonds, as and when same matured.

It appears from the record that the charter Act was amended by Chapter 14052, Special Acts of 1929, and was again amended by Chapter 18532, Acts of 1937. We think that neither of these Acts is controlling here because Chapter 14052, Special Acts of 1929, added nothing to the power so far as millage limit was concerned, which the City had under the provisions of Chapter 10563, Acts of 1925, and, it further appearing that an unlimited tax was lawfully pledged for the payment of the bonds and interest, the Legislature was without power to limit by the provisions of Chapter 18532, *supra,* the millage which could be levied to produce a fund necessary to pay such obligation as the same matured.

It follows from what has been said that the relator is entitled to have a tax levy sufficient to produce a fund sufficient to meet the payment of the interest which has matured and which will mature during the current year, but the command of the alternative writ cannot now be per-

formed because the time has expired when the specific levy sought to be coerced by that writ could be made.

The peremptory writ must, therefore, be denied, but without prejudice to the Relator to amend the amended alternative writ so that its commands shall apply to the levy for the current or future year.

It is so ordered.

TERRELL, C. J., WHITFIELD, CHAPMAN and THOMAS, J. J,. concur.

Justice BROWN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.