Caroline K. Simon, J.
This claim, not assigned and timely filed, alleges negligence of the State in the maintenance of a chair on the premises at 320 Schermerhorn Street, Brooklyn, New York. On December 8,1960, claimant states that at approximately 11 o’clock he went to the offices of the New York State Income Tax Bureau at that address to ask for help in preparing his State income tax. He was first interviewed by an employee of the Income Tax Bureau and directed to a seat to await his turn for an interview in which to receive the advice requested. Thereafter, he was called to the desk of an employee of the Income Tax Bureau and directed to sit on a chair, which chair collapsed causing the claimant to fall to the floor and sustain the personal injuries alleged to have been suffered by him.
The claimant, a 51-year-old seaman steward, is married and lives with his wife and three children when at home. He serves principally as a dining steward on ships. He states that the injuries he had received included a bruised low spine, muscular spasm of back muscles, injuries to the back, shoulders and arms, nervous shock and upset. The injuries make it difficult for him to carry trays and he, therefore, has had to refuse several work *530 assignments, thus suffering loss of wages due him, had he been able to take such work.
The claimant stresses the fact that he was directed to the chair and that in attempting to sit on it in the normal way the chair fell, causing him to fall and injure himself. The claimant relied on the doctrine of res ipsa loquitur, alleging that there was exclusiveness of control of the chair in the State and that an accident such as that which happened does not occur absent negligence.
The claimant states that he did not touch the chair, a beige folding chair with a leatherette cushion, before sitting on it. He said that after his fall, he was assisted by some of the employees at the Income Tax Bureau who brought him another chair on which to sit. The claimant also testified that he had a conversation after his fall with a man who he thinks was identified as an office manager. There was testimony, to which the State objected as hearsay, that the office manager, a Mr. Hogan, had said something to the claimant about the chair to the effect that the chair was broken and should have been repaired.
These statements made to claimant by Mr. Hogan, on which decision was reserved as to their admissibility into evidence, now are admitted under the well-established exception to. the hearsay rule that statements made by a managing agent to a plaintiff on the issue of notice of a dangerous condition are admissions against interest, since the agent is presumed to have authority to bind his principal. (See Katz v. Midtown Ticket Agency, 26 Misc 2d 66, citing numerous authorities.) Cases such as Cook v. Great Atlantic & Pacific Tea Co. (244 App. Div. 63, affd. 268 N. Y. 599) are distinguishable, since the employee whose testimony was challenged did not have authority to bind his employer. (268 N. Y., supra, p. 600.) Here the managing agent stands in pari materia with defendant and must be treated as a party to the action. The distinction was noted with approval in Glasier v. Troanovitch (264 App. Div. 940).
The claimant added that Mr. Hogan made a report in his presence. Within 10 or 15 minutes after the fall claimant said that he felt a sharp pain in his middle back, left shoulder and left arm and a numb sensation which remained after he returned home. The pain still persisted, though not as sharply. A day or two after the accident the claimant was treated by his family doctor, who examined him and gave him a prescription. Two or three weeks later the pain still persisted. The claimant went to Dr. Campbell, an osteopath physician, who treated bim two or three times and asked him to have X rays taken. The X rays *531 were taken by an X-ray specialist, Dr. Harrington, and cortisone was prescribed.
The reasonable costs of Dr. Harrington’s examinations were stated to be $12. Dr. Campbell charged $6 a visit, which totalled $18 for three visits. The cost of the X rays was $45 and. the cortisone used for over four years cost between $75 and $100 a year.
The claimant states that he now does not have control of his left arm and that the injury in the instant matter traumatized the injuries resulting from an automobile accident in Uruguay about 13 months prior to the accident on December 8,1960. The claimant states that in the earlier accident when in Uruguay claimant was dropped to the street by a bus which cut a comer a little bit sharp, a minor injury resulted to the rectum and base of his spine. It showed no damage when tests were taken on the voyage home and claimant had no pain from it until the subject accident caused sharp pain, and this traumatized the former injury. No X rays were taken at the public health office at Jay Street when he thereafter reported the Uruguay accident to them on his return, but the doctors, the clinic and the hospital on the ship knew of the accident in Uruguay. Dr. Campbell stated that .the X rays showed a moderate arthritis, but no evidence of fracture, and that there is space between the sixth and seventh vertebrae and that the spine was in slight flexion. Dr. Campbell testified that it is usual to have pain after such an accident and that the arm and shoulder pain is likely to continue and will definitely, by his prognosis, bother the claimant in the future. It was Dr. Campbell’s belief that treatment by a neurologist may be required and that surgery also may be needed to remove the tissue herniated on the disc. Dr. Campbell admitted that arthritis is not necessarily traumatic and is rather common in people of claimant’s age (51 years). He stated that a disc change can also be due to age, but that in his findings subjective complaints have been balanced with objective findings and that in this case the present condition of claimant is the result of the injury from the broken chair.
The State in its defense produced records of the American Export Line on which claimant sailed as a seaman. The records, kept in the ordinary course of business, were offered into evidence and were received as to those parts pertinent to the claim. The records include physical examinations and histories regularly given prior to voyages. The entry of December 22, 1960, the first in period of time after the instant accident, was not signed by the claimant, though the other similar entries were each signed by the claimant. In the December 22, 1960 entry *532 there is a notation that claimant reported no accidents during the period intervening between voyages, which period coincides with the period in which claimant alleges he fell at the Income Tax Bureau. The fact that this entry is not signed by the claimant, though it is signed by the doctor, is one of the considerations to which this court has given attention.
Defendant relies on the case of Ventola v. State of New York (38 Misc 2d 321). The court notes some factual differences between that case and the instant matter in that the Ventola claimant was an obese woman who, according to one of the witnesses in the case, sat on the chair in an abnormal manner. Therefore, the Ventola findings of no negligence on the part of the State and contributory negligence on claimant’s part must be differentiated from the instant matter in which the claimant was not obese but rather of normal height and weight and in which there is no evidence that he sat on the chair differently than an average person would be expected to sit.
The instant claim comes precisely within the requirement set forth in Sasso v. Randforce Amusement Corp. (243 App. Div. 552) in which when the seat in a theatre collapsed and the doctrine of res ipsa loquitur was applied, the court in that case stated (pp. 552-553): “In our opinion * * * it was incumbent upon the defendant to explain the collapse of the seat upon which plaintiff Ida Sasso sat and to absolve itself from the implication of negligence arising from the happening of the accident. (Reinzi v. Tilyou, 252 N. Y. 97.) ”
The court has considered the decision in Walcher v. State of New York (34 Misc 2d 199) in which case a filing cabinet fell at a State tax office and injured the claimant, and finds that decision, in which the doctrine was also applied to impose liability, more directly in point.
The court finds that in the instant case claimant adequately established his freedom from contributory negligence, and that the condition of the chair, which was entirely within the control of the State, caused the accident. The doctrine of res ipsa loquitur requires that defendant either rebut the inference of negligence created herein or respond in damages.
The claimant is awarded the sum of $275 to cover medical expenses and drugs required as the result of the accident and the sum of $1,000 for pain and suffering resulting from the injury, or a total award of $1,275. Because of the seasonable nature of claimant’s work the award does not include loss of wages since it is not ascertainable from the evidence adduced at the trial whether his being out of work for a month was due to a strike which occurred almost immediately after the injury or to pain and suffering caused by the accident itself.